UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL P. DAVIES,<br><br>        Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>        Defendant. | Case No.: C04-04333 NJV<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT** |

I.     INTRODUCTION

This is an appeal of the Administrative Law Judge's (ALJ) denial of Social Security benefits. Plaintiff Michael P. Davies (Plaintiff) filed a claim for Social Security Disability benefits under Title II and Part A of Title XIII of the Social Security Act on August 1, 2002, alleging disabling neck and back pain since June 6, 2001. (R. at 94.) The Social Security Administration (SSA) denied Plaintiff's claim initially on September 27, 2002 and upon reconsideration on December 11, 2002. (R. at 63, 70.)

Plaintiff appeared with counsel at a hearing held before ALJ Richard Wurdeman on July 28, 2003. (R. at 30.) The ALJ decided Plaintiff was severely impaired but not disabled within the meaning of the Social Security Act. (R. at 28-29). This became the Commissioner of Social Security's final decision upon the SSA Appeals Council's denial of Plaintiff's request for review on August 9, 2004. (R. at 3.)

Plaintiff filed a motion for summary judgment on March 10, 2005.  Defendant filed a cross motion for summary judgment on April 11, 2005.  Plaintiff filed a reply on April 23, 2005.  Plaintiff raised three legal issues for review.  First, Plaintiff alleges the ALJ erred by failing to consider Plaintiff's obesity.  Second, Plaintiff alleges that the opinion of his treating physician, Dr. Henning was wrongfully rejected.  Finally, Plaintiff alleges that the ALJ's analysis of Plaintiff's credibility with regard to his allegations of pain contains errors of law and is not supported by substantial evidence.

## II.    SUMMARY OF EVIDENCE BEFORE ALJ

### A.  Testimony at July 28, 2003 Hearing

Plaintiff appeared with counsel at a hearing before the ALJ on July 28, 2003.  Vocational expert Robert Raschke also attended the hearing.  The administrative record before the ALJ reveals the following medical and work history.

#### 1.  Plaintiff's Testimony

At the hearing, Plaintiff testified to the following regarding his employment history: Plaintiff has a high school education.  (R. at 36.)  Plaintiff worked full time as a concrete and foundation foreman for about 25 to 26 years up to the date of his injury.  Id.  He also worked in ParaTransit for a period of time assisting people in wheelchairs in and out of a handicap van.  (R. at 38.)  Plaintiff has not been employed since the date of his injury and Workmen's compensation was the source of his income.  (R. at 37.)  Plaintiff was on a period of state disability and has not had on any vocational rehabilitation.  Id.

After his injury, Plaintiff has been unable to continue taking part in the maintenance of his household such as gardening, putting up a fence or cooking.  (R. at 47.)  Plaintiff's activities after his injury consist of sitting on the couch and watching TV, pacing, and napping.  (R. at 48.)

Plaintiff testified that he gave up activities , such as golfing, throwing and catching a baseball, and boating, because of his neck and shoulder injuries.  (R. at 44.)

At the hearing, Plaintiff also testified to the following regarding his right shoulder injury: Plaintiff was 46 years old, 5'8" tall and weighed 180 pounds.  (R. at 35.)  Dr Henning was Plaintiff's treating physician four months before the administrative hearing.  (R. at 39.)  Dr. Henning performed surgery on Plaintiff's right shoulder but stopped treatment because Plaintiff's neck was interfering with rehabilitation of his shoulder.  Id.   Plaintiff's right shoulder surgery was successful in alleviating some of his pain problems in the shoulder area but he still did not have flexibility in the shoulder.  (R. at 42.)  He demonstrated that he could raise his right arm parallel to the ground and testified he could not raise it any higher because "it's real painful."  Id.  In addition, his hands and legs occasionally go numb, causing him to drop objects or causing his hands to fall off the steering wheel.  (R. at 46.)

At the hearing, Plaintiff also testified to the following regarding his neck injury:  Plaintiff demonstrated that he was limited to turning his head about 60 degrees to the right and had trouble moving his head back and to the left.  Id.

Plaintiff testified that he was on 150 grams of Elavil, and six tablets of Norco, a pain killer, per day.  (R. at 40.)  He was also taking Celebrex for arthritis, Nexium for stomach pain and Wellbutrin, an anti-depressant.  (R. at 40-41.)

### 2.  Vocational expert Robert Rashcke's testimony

Vocational Expert Robert Raschke testified to the following:  Based on his review of the vocational portion of Plaintiff's file and Plaintiff's testimony, he classified Plaintiff's past work as cement trades and classified plaintiff as a cement finisher who was also doing some supervision work.  (R. at 51.)  A hypothetical individual of Plaintiff's age, educational and

vocational background and with residual and limited functioning could return to light level work, such as a security guard.

### B. Medical Evidence

#### 1. Treating physician, Dr. Carl Henning.

On January 16, March 11 and May 15 of 2002, Dr. Carl Henning completed "State Compensation Fund Treating Physician's Report of Disability Status" forms indicating his opinion of Plaintiff's disability status. (R. at 215, 219, 223.) On January 16, 2002, he was of the opinion that Plaintiff should be precluded from returning to work at the pre-injury occupation and estimated vocational rehabilitation might be possible by April 2002, pending surgery at the shoulder. (R. at 223.) On March 11, 2002, he indicated Plaintiff was physically able to perform light duty work with no overhead work and no lifting over 25 pounds occasionally. (R. at 219.) On May 15, 2002, he indicated that Plaintiff would not be able to perform light work and estimated he would not be able to give an opinion concerning the employee's ability to return to the pre-injury occupation until August 15, 2002. (R. at 215.)

#### 2. Examining physician, Dr. William Ramsey.

On June 3, 2002, Dr. William Ramsey interviewed, examined and evaluated Plaintiff for the State Compensation Insurance Fund. (R. at 247.) He recommended that Plaintiff be precluded from heavy lifting and repeated bending activities. (R. at 253.) He did not feel Plaintiff was capable of returning to work as a construction laborer unless he worked as a supervisor and avoided heavy lifting, overhead work and repeated extreme bending. (R. at 254.) However if that was not possible, he recommended Plaintiff be considered a qualified injured worker for purposes of vocational retraining. Id.

#### 3. Examining physician, Dr. James R. Schneider.

4

On August 22, 2002, Dr. James R. Schneider interviewed and examined Plaintiff and reviewed Plaintiff's available medical records for a determination of his functional status. (R. at 283.) He felt Plaintiff would be at risk if he attempted to return to his full, former level of work activities. Id. He also felt Plaintiff's disability precluded him from: heavy lifting, repeated bending, working in an over the shoulder position with his right upper limb forward, to the side or posterior reaching. Id. He also felt Plaintiff did not have the capacity to push, pull or lift longer than one minute at a time or more frequently than once every two minutes. Id. He felt Plaintiff should be considered a qualified injured worker for vocational rehabilitation purposes. Id.

4. **State Agency consultants**

In September 2002, a State Agency consultant indicated the following residual functional capacity to engage in the following: occasionally lift and/or carry 20 pounds; occasionally lift and/or carry 10 pounds; stand and/or walk for about 6 hours in an 8-hour day; and no limitations on pushing or pulling. (R. at 257.) He also recommended limiting postural activities to occasional climbing, stooping, kneeling, crouching, and crawling. (R. at 258.)

In December 2002, another State Agency consultant noted the same residual functional capacity limitations but added three limitations: (1) Plaintiff's ability to push and/or pull was limited in the right upper extremity, (2) Plaintiff should not do overhead work or frequently or forcefully use his upper right extremity, and (3) Plaintiff should never climb ropes, ladders, or scaffolds. (R. at 268-270.) Lastly, it was also noted that Plaintiff should be capable of light work. (R. at 269.)


### 5. Dr. Kelly Nicholas

On May 10, 2003, Dr. Kelly Nicholas completed a comprehensive orthopedic evaluation. (R. at 284.) Her functional assessment was that Plaintiff was capable of: lifting and carrying 20 pounds on an occasional basis and 10 pounds on a frequent basis; sitting, standing, or walking for 6 hours in an 8 hour work day; and kneeling, crouching, crawling, and stooping on an occasional basis. (R. at 288-289.) She also felt Plaintiff was limited in his ability to push, pull, reach and handle by his upper extremities. (R. at 289.) Lastly, She felt working with vibrating tools or instruments would exacerbate Plaintiff's upper extremity and neck pain. Id.

### III.   STANDARD OF REVIEW

The factual findings of the Commissioner of Social Security shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Commissioner's findings may be set aside only if they are based on legal error or are not supported by substantial evidence. Reddick v. Chater, 157 F. 3d 715, 720 (9th Cir. 1998); (citing Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). Substantial evidence is more than a scintilla but less than preponderance. It is relevant evidence which a reasonable person might accept as adequate to support a conclusion. Reddick, 157 F.3d at 720 [internal citations omitted](citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir 1997)).

The court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the commissioner's conclusion." Magellenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary. Reddick, 157 F.3d at 720 (citing Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## IV. DISCUSSION

### A. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  U.S.C. § 423 (d)(1)(A).

The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled.  C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987).  First, the SSA determines whether the claimant is engaged in substantial gainful activity.  C.F.R. § 404.1520(b).  If the claimant is not engaged in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a medically severe impairment or combination of impairments.  C.F.R. § 404.1520(c).  If the claimant has a severe impairment, the SSA proceeds to step three to "determine whether the impairment is equivalent to one of a number of listed impairments (listings) that the Secretary acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; C.F.R. § 404.1520(d).  The SSA presumes that a claimant is disabled if his impairment meets one of the listings.  Id.

If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, which is then used to determine whether the claimant's impairment "prevents [him] from performing work [he] has performed in the past."  C.F.R. § 404.1520(e).  The SSA considers the claimant not disabled if he is able to perform his past work.  Id.

If the claimant cannot perform his past work, the SSA proceeds to step five to determine whether the claimant can perform other work in the national economy, considering his age,

education, and work experience.  C.F.R. § 404.1520(f).  If the claimant cannot perform other work, the SSA finds him disabled.  C.F.R. § 404.1520(f)(1).

The ALJ decided that Plaintiff was not disabled at any time on or before the date of the decision

### 1.   Step 1: Engaged in substantial gainful activity

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, June 6, 2001.  (R. at 28.)

### 2.   Step 2: Medically severe impairment or combination of impairments

The ALJ found that Plaintiff had "severe" medically determinable impairments consisting of cervical spine degenerative disease (osteoarthritis), postoperative posterior labral tear in the right shoulder, and lumbar strain with diffuse degenerative disease in the lumbar spine, based on the requirements in the regulations 20 C.F.R. § 404.1520(b).  Id.

### 3.   Step 3: Listed Impairments

The ALJ found that these "severe" medically determinable impairments did not meet or medically equal one of the listed impairments founds in 20 C.F.R., pt. 404, supt. P, app. 1.  Id.

### 4.   Step 4: Residual Functional Capacity

The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work.  Id.  The ALJ discredited Plaintiff's allegations regarding his limitation and considered all of the medical opinions in the record regarding the severity of Plaintiff's impairments.  The ALJ also found Plaintiff was unable to perform any of his past work and had no transferable work skills.  Id.

### 5. Step 5: Performance of other work in the national economy.

Based on Plaintiff's age, educational and work history, residual functional capacity and the testimony of a vocational expert, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy such as a security guard. (R. at 28.) The ALJ also found Plaintiff was unable to perform any of his past work and had no transferable work skills. Id.

### B. Issues for Review

Plaintiff challenges the ALJ's finding that Plaintiff is not disabled. In support of Plaintiff's request for the review of ALJ's decision, Plaintiff argues: (1) the ALJ erred by failing to consider Plaintiff's obesity; (2) the opinion of his treating physician, Dr. Henning was wrongfully rejected; and (3) that the ALJ's analysis of Plaintiff's credibility with regard to his allegations of pain contains errors of law and is not supported by substantial evidence.

### 1. The ALJ did not err in failing to consider Plaintiff's obesity.

It appears from the record that the ALJ neither considered nor addressed Plaintiff's obesity because Plaintiff did not allege obesity. There is no diagnosis of obesity in the medical record nor was obesity mentioned in any treatment plans. Plaintiff argues that Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003) controls this case. Celaya held the ALJ has a duty to look for obesity as an impairment regardless of whether such impairment is mentioned in the record. Id. at 1182.

This court reads Celaya more narrowly than Plaintiff advocates because the facts of this case do not "trigger" inclusion of obesity in this multi impairment analysis. In explaining what triggers inclusion of a factor in a multiple impairment analysis, Celaya listed three reasons why the ALJ had a heightened duty to develop the record in that case:

9

>First, it was raised implicitly in Celaya's report of symptoms.  Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses.  Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya v. Halter, 332 F.3d at 1182-1183.

The court responded to the dissent's warning against requiring ALJs to hold "séance-like proceedings" by noting that either Celaya's height and weight or appearance alone would have put the ALJ on notice that Celaya was "extremely obese." Id. at 1183 n.3.  In addition, Celaya was illiterate and unrepresented by counsel.  Id.

Although the ALJ always has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel" the facts in this case do not require a heightened duty as in Celaya.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Even by the most generous calculations of Plaintiff's height and weight, Plaintiff would have been categorized as "Level I obese" with a BMI close to 33.[1]  It is not clear from Plaintiff's height and weight that his appearance alone would have put the ALJ on notice that Plaintiff was obese rather than simply overweight.[2]  Plaintiff was represented by counsel at his administrative hearing and on appeal but did not raise obesity as an issue until this appeal.  The ALJ did not err in failing to consider Plaintiff's obesity as an impairment.

---

[1] Clinical guidelines classify overweight and obesity according to the BMI.  BMI is equal to one's weight (kg) divided by the square of one's height (m).  The following is a range of BMI is followed by its corresponding descriptor according to clinical guidelines:  25-29.9 describes overweight; 30-34.9 describes Level I obesity; 35-39.9 describes Level II obesity; and 40 or greater describes Level III extreme obesity.  SSR No. 02-01p.
Plaintiff's recorded height and weight varies within the record but the measurements most favorable to Plaintiff's argument for finding an impairment of obesity are a height of 5'6" and weight of 205 pounds on May of 2003.  (R. at. 286.)
[2] Though it is difficult to ascertain whether Plaintiff appeared overweight at his hearing, the ALJ does not make any remarks as to Plaintiff's appearance in the transcript.

Even if the ALJ erred in discounting Plaintiff's obesity, Plaintiff carried the initial burden of proving he has a listing impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff must present evidence to establish equivalence to a listing. Id. Again, Plaintiff did not raise obesity as an issue until this appeal and even as Plaintiff raises the issue, he fails to identify which listing his impairment of obesity might meet or equal. Plaintiff also fails to point to evidence in the record that shows his obesity equals a listing. Rather, he seems to contend that the influence of obesity on back pain is "so well-known" as to not require any evidence such as a "specific statement from a physician that the weight is contributory." Plaintiff's Motion for Summary Judgment (PMSJ), 6. Indeed, the record is silent as to how obesity affects his functional impairment, treatment plans, and diagnoses.

The facts of this case do not trigger inclusion of obesity in a multi impairment analysis. Firstly, plaintiff has been represented by counsel and yet the record is silent as to the impairment of obesity. Secondly, unlike previous cases decided by this court, Plaintiff is not so extremely or morbidly obese as to appear impaired by obesity. In particular, the most generous estimation of Plaintiff's height and weight classifies him as Level I obese, only one level higher than a classification of "overweight." Lastly, Plaintiff fails to identify evidence to establish equivalence to a listed impairment. Plaintiff's Motion for Summary Judgment on grounds that the ALJ failed to consider obesity as an issue is denied.

### 2. The ALJ properly set forth specific and legitimate reasons for rejecting the opinion of treating physician, Dr. Henning.

Generally, a treating physician's opinion is given more weight than an examining or a non-examining physician's statement. Magellenes, 881 F.2d at 751. To reject a treating physician's contradicted opinion, the ALJ must make findings setting forth specific, legitimate

11

reasons for doing so that are based on substantial evidence on the record.  Id.  The ALJ rejected Dr. Henning's opinion that Plaintiff was incapable of working because "the medical evidence, as discussed above, does not support this opinion."  (R. at 26.)

Plaintiff initially alleges that the ALJ committed three material "factual" errors in rejecting the opinion of treating physician, Dr. Henning.  PMSJ, 7.  However, those enumerated errors are not actually factual errors.  Rather, they are better characterized as further arguments for interpreting conflicting evidence in Plaintiff's favor.

Plaintiff also alleges that the ALJ erred in deciding Dr. Henning's opinion was unduly influenced by reliance on Plaintiff's subjective complaints.  The ALJ's decision notes that Dr. Henning relied on Plaintiff's complaints even though his own objective findings did not support his conclusion that Plaintiff is not capable of working.  (R. at 23.)  In particular, the ALJ pointed to page 178 of the administrative record, and summarized that Dr. Henning noted Plaintiff "exhibited full right shoulder range of motion with normal sensation without significant muscle atrophy."  Id.

In addition, several other examining and reviewing physicians' opinions contradicted Dr. Henning's conclusion.  The ALJ stated that those physicians found the claimant "capable of performing a limited range of light work consistent with residual functioning."  (R. at 26.)  A review of these medical reports finds that this statement is accurate and supported by substantial evidence on the record.

The ALJ set forth specific and legitimate reasons for rejecting Dr. Henning's opinion that are supported by substantial evidence in the record.  The ALJ did not err in rejecting Dr. Henning's opinion.  Plaintiff's Motion for Summary Judgment on grounds that the ALJ improperly rejected treating physician's opinion is denied for the reasons above.

### 3. The ALJ set forth specific reasons for discrediting Plaintiff's subjective allegations of pain which are supported by substantial evidence.

Plaintiff alleges that the ALJ erred in finding that Plaintiff's daily activities discount his allegations of pain. PMSJ, 9. The ALJ must give a detailed statement with specific reasons for rejecting a claim of pain. SSR 96-7p, Appendix III. According to the ALJ, Plaintiff's contention "that his physical impairments are so debilitating that he is unable to perform work at any level of exertion is inconsistent with the medical evidence summarized above and with his own statements." (R. at 26.)

The ALJ found that Plaintiff's ability to engage in daily activities could be transferred to the workplace. For instance, Plaintiff wrote he takes short walks, drives to get the mail or go to doctor appointments and dresses and grooms himself. (R. at 130, 141, 248.) Citing these reasons, the ALJ concluded that Plaintiff is capable of performing more than he asserts in his application. (R. at 26.)

If the ALJ simply relied on Plaintiff's ability to perform daily activities in discounting his allegations of pain, then there may be cause for remand. The ability to perform simple functions, such as driving, is not substantial evidence of an inability to engage in substantial gainful activity because "the fact that Plaintiff can do some day to day activities despite [his] pain does not mean that [he] can return to [his] previous job or engage in substantial gainful employment." Haase v. Apfel, 1998 U.S. Dist. LEXIS 17841, *4 (N.D. Cal. 1998).

Rather than rely solely on Plaintiff's ability to perform daily activities, the ALJ also considered the specific medical findings of Plaintiff's treating, examining and reviewing physicians. According to the ALJ, these physicians found Plaintiff "capable of performing a limited range of light work consistent with the residual functional capacity found herein." (R. at

26.) As discussed above, the ALJ's findings with regard to objective medical findings are supported by substantial evidence on the record.

After a careful review of the record and case law, the record demonstrates that the ALJ made specific findings explaining his decision to discredit Plaintiff's subjective allegations of pain. Further, there is substantial evidence in the record to support the ALJ's findings. Plaintiff's Motion for Summary Judgment on grounds that the ALJ improperly discredited Plaintiff's allegations of pain is denied.

### V.     CONCLUSION

Accordingly it is hereby **ORDERED** that Defendant's Motion of Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**. The Commissioner's decision is **AFFIRMED**.

Dated: 3/28/06

NANDOR J. VADAS
United States Magistrate Judge